## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

STERLING STEVENS,

Plaintiff,

v.

9:20-CV-853
(BKS/ATB)

SERGEANT DUQUETTE and
M. MILLER,

Defendant.

STERLING STEVENS, Plaintiff, pro se
DAVID C. WHITE, Asst. Attorney General for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

### REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, by the Honorable Brenda K. Sannes, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).  In this civil rights action, plaintiff alleges various constitutional violations that occurred while he was incarcerated at Clinton Correctional Facility ("Clinton C.F."), in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").  Plaintiff filed the complaint on July 30, 2020.  (Dkt. No. 1). After the court's initial review of the complaint pursuant to 28 U.S.C. §§ 1915, 1915A, Judge Sannes allowed plaintiff's First Amendment retaliation claims against defendants Sergeant ("Sgt.") Duquette and Correctional Officer ("C.O.") Miller to proceed to litigation. (Dkt. No. 7).

Presently before the court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56, seeking dismissal of the complaint in its entirety.  (Dkt. No. 31). Plaintiff responded in opposition to the motion on October 18, 2021 (Dkt. No. 36), and

defendants filed a reply brief on October 21, 2021 (Dkt. No. 44).  For the reasons set forth below, the court recommends granting defendants' motion for summary judgment and dismissing the complaint on the merits of plaintiff's retaliation claims.

## I.    **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities,

2

and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

Credibility assessments and the choice between conflicting versions of a story are generally for a jury to resolve. *Rule v. Brine, Inc*. 85 F.3d 1002, 1011 (2d Cir. 1996). However, the Second Circuit recognized an exception to this rule in *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005). In *Jeffreys*, the court held that summary judgment may be granted in the rare case, "where there is nothing in the record to support the plaintiff's allegations, aside from his own contradictory and incomplete testimony, and even after drawing all inferences in the light most favorable to the plaintiff, the court determines that 'no reasonable person' could credit . . . his testimony." *Quick v. Quinn*, No. 9:12-CV-1529 (DNH/DEP), 2014 WL 4627106, at *4 (N.D.N.Y. Sept. 11, 2014) (quoting *Jeffreys*, 426 F.3d at 54-55). In order for the court to apply the *Jeffreys* exception, the defendant must satisfy each of the following: (1) "the plaintiff must rely 'almost exclusively on his own testimony,' "(2) the plaintiff's "testimony must be 'contradictory or incomplete,' " and (3) the plaintiff's testimony must be contradicted by evidence produced by the defense. *Id.* (quoting *Benitez v. Ham*, No. 04-CV-1159 (NAM/GHL), 2009 WL 3486379, at *20-21 (N.D.N.Y. Oct. 21, 2009) (adopting report and recommendation) (quoting *Jeffreys*, 426 F.3d at 554)).

## II.    **Factual Contentions**

Plaintiff was an inmate in the custody of Clinton C.F. at all times relevant to the underlying complaint. The following is a summary of the facts as stated in the complaint. To the extent that additional facts were developed through discovery, and

included in the summary judgment motion, I will discuss them during my analysis of the pending claims.

On June 24, 2019, plaintiff ordered a substantial package of food from an outside vendor. (Complaint ("Compl.") at 4)[1] (Dkt. No. 1). Plaintiff was called to the "package room" on July 10, 2019 to sign for his food package, which weighed twenty-six (26) pounds. (*Id.*). Plaintiff signed for the package, at which time defendant C.O. Miller approached plaintiff with a second package of food items and advised plaintiff that he could not have the items contained in the package she was holding. (*Id.*). Plaintiff requested a "sergeant's review" of C.O. Miller's determination as to the second package. (*Id.*). C.O. Miller informed plaintiff that he "could not have" a "sergeant's review," to which plaintiff responded, "I think I can." (*Id.*). C.O. Miller then stated, "you want to play that game," and "snatched back the [26 lb.] box" that plaintiff had already signed for. (*Id.*).

Concerned about losing items of food in the larger package, plaintiff "declined the sergeant[']s review" and "pleaded with [C.O. Miller] not to take the 26-pound package [he] just signed for." (*Id.*). In response, C.O. Miller "demanded that [plaintiff] put [his] hands on the wall." (*Id.*). Plaintiff complied, and C.O. Miller "walked away to call other officers[,] who came and escorted [plaintiff] back to the clinic and then [his] housing unit, where [he] was placed on keep lock." (*Id.* at 4–5).

Prior to this incident, plaintiff had filed multiple grievances regarding the conduct of correctional officers working in the package room at Clinton C.F. (*Id.* at 5).

---

[1]Citations to the parties' motion papers refer to pagination generated by the court's electronic filing system ("CM/ECF").

Earlier the same day, the Central Office Review Committee had addressed a complaint plaintiff previously filed against a package room officer. (*Id.*). Plaintiff alleges that he also had two other "grievance appeals" concerning "harass[ment]" and "retaliation" by package room officials pending "in Albany[.]" (*Id.*).

On July 11, 2019, C.O. Miller authored a misbehavior report against plaintiff, charging him with, among other things, violating a direct order, creating a disturbance, harassment, and interference with an employee. (Compl. at 5; Dkt. No. 1-3 at 11). On July 12, 2019, plaintiff attended a Tier II disciplinary hearing based on the misbehavior report. (*Id.*). Plaintiff was found guilty of "Refusing a Direct Order (106.10), Facility Packages Violation (180.12), and Creating a Disturbance (104.3)" based on the video recording of the events at issue and the testimony of C.O. Miller. (Compl. at 3, 6, 9; Dkt. No. 1-3 at 16–18). He was sentenced to 30 days of keeplock confinement, as well as loss of recreation, package, commissary, and telephone privileges for thirty days. (*Id.*). Plaintiff also lost his assignment as an Inmate Program Assistant, and his status in honor housing. (Compl. at 9). The disciplinary determination was affirmed on July 19, 2019. (Compl. at 6; Dkt. No. 1-3 at 20). Plaintiff was eventually given the smaller package of food items that C.O. Miller stated he could not have, but the larger package of food items that he had signed for was destroyed. (Compl. at 6–7).

On July 17, 2019, plaintiff was issued a "false" misbehavior report for "dirty" urine. (Compl. at 9; Dkt. No. 1-3 at 33–40). He attended a Tier III disciplinary hearing for the misbehavior report associated with his "dirty" urine on July 30, 2019. (Dkt. No. 1-3 at 52). At the conclusion of the hearing, plaintiff was found guilty and sentenced to

30 days of keeplock confinement.  (Compl. at 9).  Although the disciplinary determination was eventually overturned, plaintiff spent sixty consecutive days in keeplock confinement as a result of his two "false" misbehavior reports.  (*Id.*).

On August 5, 2019, plaintiff submitted an Article 75 complaint to the Commissioner of DOCCS wherein he complained about wrongdoing by, among others, defendant Sgt. Duquette.  (Dkt. No. 1-3 at 33–40).  Specifically, plaintiff claimed that Sgt. Duquette questioned him on July 15, 2019 about whether he wrote a letter to C.O. Miller and enclosed "an alleged piece of [feces] in tissue[.]" (*Id.* at 39).  Plaintiff denied sending the letter, but acknowledged filing a grievance and Article 75 complaint against C.O. Miller.  (*Id.*).  The next day, he was forced to take a urine test that yielded a "dirty" result, even though he does not use drugs or alcohol.  (*Id.*).

On August 27, 2019, Sgt. Duquette also "falsely claimed that he had investigated [plaintiff's] facility claim [regarding destroyed food items related to the July 10, 2019 incident], and found that [plaintiff] refused to sign for [his] package[.]" (Compl. at 3; Dkt. No. 1-3 at 23).  Sgt. Duquette concluded that plaintiff's actions created a disturbance, and made him responsible for the disposition of his food package.  (Compl. at 6–7; Dkt. No. 1-3 at 23).  Plaintiff appealed Sgt. Duquette's finding, which appeal was ultimately dismissed on August 27, 2019.  (Compl. 7; Dkt. No. 1-3 at 23).

## DISCUSSION

### III.    Exhaustion of Administrative Remedies

#### A.    Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an

6

inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004), (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002)), abrogated on other grounds by *Ross v. Blake*, 578 U.S. 632 (2016). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

In order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *Woodford,* 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Incarcerated[2] Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d). The court also notes that the regulations

---

[2] This committee was formerly known as the "Inmate Grievance Resolution Committee," but has recently been renamed.

governing the Incarcerated[3] Grievance Program ("IGP") encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* § 701.8. Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the Superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) & (I), 701.5.

Prior to *Ross v. Blake, supra*, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

In *Ross*, the Supreme Court made it clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, 578 U.S. 632, 640 (2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, 578 U.S. at 639). Although *Ross* has eliminated

---

[3] The program was formerly known as the "Inmate Grievance Program," but has recently been renamed.

the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, 578 U.S. at 642. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id; see also Riles*, 2016 WL 4572321 at *2.

### B.    Application

Defendants argue that plaintiff's retaliation claim against C.O. Miller is subject to dismissal due to plaintiff's failure to exhaust his administrative remedies. Specifically, defendants contend that plaintiff failed to appeal the Superintendent's determination of plaintiff's grievance concerning the July 10, 2019 incident to CORC. In support of their position, the defendants have submitted the sworn declarations of Rachael Seguin, the Assistant Director of the Incarcerated Grievance Program ("IGP") for DOCCS, and Tara Brousseau, the Incarcerated Grievance Program Supervisor at Clinton C.F. (*See generally* Declaration of Rachael Seguin ("Seguin Decl."); Declaration of Tara Brousseau ("Brousseau Decl.")) (Dkt. Nos. 31-6; 31-7). These declarations, and the evidence attached as exhibits thereto, provide compelling evidence that plaintiff did not appeal the grievance identified by defendants as relevant to the underlying claim against C.O. Miller to CORC. Defendants have established that plaintiff filed Grievance No. CLA-8372-19 on or about July 15, 2019. (Brousseau Decl. ¶ 16, Ex. B at 10–11). Grievance No. CLA-8372-19 complained about C.O. Miller's alleged conduct relative

to the July 10, 2019 incident. (*Id.*). Defendants have further established that the Superintendent issued a response to Grievance No. CLA-8372-19 on July 30, 2019, in which he concluded that plaintiff's grievance was unsubstantiated. (*Id.* Ex. B at 14). According to the DOCCS records submitted to this court, CORC never received an appeal of Grievance No. CLA-8372-19 from plaintiff. (Seguin Decl. ¶ 14, Ex. A at 7).

Plaintiff disputes the defendants' contention that he did not adequately exhaust his administrative remedies with respect to the July 10, 2019 incident. Plaintiff concedes that he filed Grievance No. CLA-8372-19 on or about July 11, 2019. (Plaintiff's Opposition to Defendants' SJM Part 1 ("Pl.'s Opp. Pt. 1") at 2) (Dkt. No. 36). However, plaintiff contends that this grievance "wasn't answered at all." (*Id.*). Plaintiff maintains that a number was not assigned to his original grievance until plaintiff filed another grievance entitled "Video Footage/False Ticket" on or about August 1, 2019. (*Id.*). The records submitted by both parties reflect that this subsequent grievance was assigned a separate grievance number, Grievance No. CLA-8384-19, and suggests that the substance of this grievance also concerned, to some extent, the underlying events surrounding the July 10, 2019 incident involving C.O. Miller and plaintiff in the package room. (Brousseau Decl. Ex. A at 7; Pl.'s Opposition to Defendants' SJM Part 2 ("Pl.'s Opp. Pt. 2") at 36, Dkt. No. 36-1).[4]  Notably,

---

[4]It appears that the hearing officer presiding over plaintiff's Tier II disciplinary hearing relative to the July 11, 2019 misbehavior report relied, in part, on video surveillance of the subject incident in finding plaintiff guilty of the charged violations. (Plaintiff's Opposition to SJM Part 3 ("Pl.'s Opp. Pt. 3) at 9). The video footage relied upon did not include any audio component. (*Id.* at 2, 7). Plaintiff apparently contested the fact that he was found guilty of the violations assessed against him by C.O. Miller in the "false misbehavior report" based on the visual footage alone, and thus authored Grievance No. CLA-8384-19. (*Id.*; *see also* Compl. at 5–6).

DOCCS's records indicate that Grievance No. CLA-8384-19 was appealed to and received by CORC on September 19, 2019. (Seguin Decl. Ex. A at 7). It appears that CORC had not issued a response to plaintiff as of July 30, 2020, the date he filed the instant federal action, as Grievance No. CLA-8384-19 was issued a "scheduled date" with CORC of December 10, 2020. (*Id.*).

Defendants have highlighted plaintiff's deposition testimony suggesting that the Superintendent's decision concerning plaintiff's initial grievance, Grievance No. CLA-8372-19, would be automatically forwarded to CORC based solely on his request for such action in the body of his grievance. (Affidavit of David White Ex. A ("Pl.'s Dep.") at 21–23; *see also* Brousseau Decl. Ex. B at 11). On this point, the court agrees that plaintiff did not adequately exhaust his administrative remedies with respect to Grievance No. CLA-8372-19 simply by virtue of the language contained in his initial grievance, seeking to somehow streamline the appeals process. However, as previously discussed the record reflects that plaintiff also filed Grievance No. CLA-8384-19, which among other things appears to have included a complaint about the "false" misbehavior report plaintiff received from C.O. Miller relative to the incident at issue. There is no dispute that this grievance was appealed to CORC for purposes of exhaustion.

Defendants do not address Grievance No. CLA-8384-19 in their motion papers, nor have they included a copy of this grievance in order for the court to better determine whether plaintiff adequately described the conduct underlying the claims he now brings in federal court therein. *See Reynolds v. Stone,* No. 9:20-CV-686 (TJM/ML), 2021 WL 3271805, at *9 (N.D.N.Y. May 24, 2021), *report and recommendation adopted,* 2021

WL 3269053 (July 30, 2021) ("[A] review of a prison grievance is "liberal," and "a claim may be exhausted when it is closely related to, but not explicitly mentioned in an exhausted grievance[.]")(citation omitted); *Murray v. Gillani*, No. 12-CV-401 (LEK/ATB), 2013 WL 838351, at *8 (N.D.N.Y. Feb. 11, 2013), *report and recommendation adopted*, 2013 WL 838306 (N.D.N.Y. Mar. 6, 2013). Nevertheless, the records presently before this court suggest that Grievance No. CLA-8384-19 included allegations in connection to the events underlying plaintiff's claim against C.O. Miller, and that this grievance was sufficiently appealed through the DOCCS grievance procedure. Defendants have failed to produced any evidence establishing otherwise, and thus have not met their burden on this defense. Accordingly, plaintiff's complaint against C.O. Miller is not subject to dismissal on this basis.

Defendants have alternatively requested this court order an evidentiary hearing to resolve any outstanding issues of fact regarding plaintiff's purported failure to exhaust his administrative remedies. Assuming defendants have sufficiently raised a material question of fact as to this issue,[5] the court need not determine whether an evidentiary hearing on the issue of exhaustion is appropriate based on the below recommendations to dismiss the complaint on the merits of plaintiff's retaliation claims.

## IV. <u>Retaliation</u>

### A.    **Legal Standards**

---

[5] Admittedly, plaintiff testified that his initial grievance was the "only grievance" he filed against C.O. Miller with respect to the July 10th incident. (Pl.'s Dep. at 58). However, it appears plaintiff's testimony was made in the context of his understanding, perhaps incorrect, that Grievance No. CLA-8372-19 had been consolidated with Grievance No. CLA-8384-19 upon the filing of the latter. (Pl.'s Dep. at 23, 31–32; Pl.'s Opp. Pt. 1 at 2, Pl.'s Opp. Pt. 2 at 5).

To state a First Amendment claim of retaliation, an inmate must allege facts plausibly suggesting that (1) the speech or conduct at issue was protected, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected conduct and the adverse action. *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014)(citations omitted). The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013) (quoting *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir. 2003)). In other words, we must examine prisoners' claims of retaliation with "skepticism and particular care." *Rivera v. Goord*, 119 F. Supp 2d 327, 339 (S.D.N.Y. 2000) (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)). Accordingly, a First Amendment retaliation claim must be supported by "specific and detailed factual allegations," and not stated in "wholly conclusory terms." *Dolan v. Connolly,* 794 F.3d 290, 295 (2d. Cir. 2015) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 (2002)).

In order to satisfy the final prong, "the causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Cruz v. Grosso,* No. 9:13-CV-30 (FJS/TWD), 2014 WL 2176256, at *6 (N.D.N.Y. May 23, 2014) (citing *inter alia Colon,* 58 F.3d at 873). Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, including temporal proximity between the protected activity and the alleged retaliatory act, and statements by the defendant

concerning his or her motivation.[6] *Cruz,* 2014 WL 2176256, at *6 (citing *Colon*, 58 F.3d at 872-73). However, temporal proximity alone is not enough to establish a causal connection. The Second Circuit has held that where "timing is the only basis for a claim of retaliation . . . an inference of retaliation does not arise." *Thomas v. Waugh,* No. 9:13-CV-0321 (MAD/TWD), 2015 WL 5750945, at *15 (N.D.N.Y. Sept. 30, 2015) (quoting *Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 95 (2d Cir. 2001).

### B.    Application

#### 1.    C.O. Miller

Plaintiff alleges that C.O. Miller issued him a misbehavior report on July 11, 2019 in retaliation for (1) plaintiff having filed other grievances against "package room officers" prior to that date, and (2) plaintiff requesting a sergeant's review of the items C.O. Miller denied him. (Compl. at 4–7). At his deposition, plaintiff testified that before the July 10th incident, he had filed "numerous grievances against package room staff" that worked in the package room both before and during C.O. Miller's placement there. (Pl.'s Dep. at 33). Plaintiff testified that none of the prior grievances were against C.O. Miller. (*Id.*). Plaintiff also referenced another incident prior to July 10th wherein a male correctional officer denied plaintiff one of the food items he had ordered from an outside vendor, because it did not comply with the applicable DOCCS directive. (*Id.* at 46). A female correctional officer (not C.O. Miller) then came up behind the male correctional officer and stated, "Be careful, he going to grieve you." (*Id.*). C.O. Miller was not in the package room that day, but she usually worked there

---

[6] This court recognizes the existence of other factors, as discussed in *Colon,* applicable only when the alleged adverse action is the issuance of a misbehavior report.

with the female correctional officer who made the comment.  (*Id.* at 47).

Plaintiff also testified generally that the correctional officers at Clinton C.F. have "made comments" about how Plaintiff "like[s] to grieve."  (*Id.* at 46–47).  In his complaint, plaintiff alleged that it was "highly probable" that C.O. Miller was retaliating against plaintiff for filing previous grievances.  (Compl. at 5).  At his deposition, Plaintiff testified that he is "sure" C.O. Miller was aware of his prior grievances against correctional officers working in the package room, because C.O. Miller's partner knew that plaintiff was "used to grieving," and plaintiff "believe[d] C.O. Miller [knew] too." (*Id.* at 48).

At the outset, the court finds no basis to conclude that plaintiff's verbal demand for a sergeant's review of C.O. Miller's determination to withhold certain items from plaintiff's food package was protected conduct for purposes of his retaliation claim. Although the Second Circuit has yet to articulate a bright line rule regarding constitutionally-protected oral speech by an inmate, several district courts in this Circuit have held that a verbal confrontation with a correction officer based on an inmate's dissatisfaction with that officer's directive is one example of speech that is not constitutionally-protected activity. *Coleman v. Racette*, No. 9:18-CV-0390 (MAD/CFH), 2021 WL 4312392, at *11 (N.D.N.Y. May 27, 2021) (listing cases), *report and recommendation adopted*, 2021 WL 3508342 (N.D.N.Y. Aug. 10, 2021). Here, plaintiff's failure to comply with C.O. Miller's orders and his request that a sergeant be called "is more in the nature of a confrontation or argument.  Thus, it does not constitute protected speech to support a retaliation claim." *Hinton v. Pearson*, No.

3:21-CV-863, 2021 WL 4521994, at *4 (D. Conn. Oct. 4, 2021) (plaintiff's verbal request that a lieutenant be called was not protected speech for first amendment retaliation purposes); *see also Rossi v. Goord*, No. 00-CV-1521, 2006 WL 2811505, at *10 n.16 (N.D.N.Y. Sept. 28, 2006) ("The questioning by an inmate of a lawful order given by a corrections officer, however, does not constitute protected speech deserving of First Amendment protection.") (citation omitted).

Plaintiff also claims that C.O. Miller retaliated against him for filing grievances against other correctional officers at Clinton C.F. It is well settled that the filing of prison grievances is a constitutionally protected activity for purposes of an inmate's First Amendment retaliation claim. *Brandon v. Kinter*, 938 F. 3d 21, 40 (2d Cir. 2019) ("The filing of prison grievances is a protected activity.") (citing *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003)). Moreover, the filing of a false misbehavior report "that results in some form of punishment that cannot be labeled *de minimis* has been found sufficient to constitute adverse action." *Gilmore v. Blair*, No. 9:18-CV-463 (GLS/DJS), 2020 WL 5792467, at *6 (N.D.N.Y. June 30, 2020), *report and recommendation adopted*, 2020 WL 5775203 (N.D.N.Y. Sept. 28, 2020) (listing cases). However, even assuming that plaintiff has satisfied the first two prongs of a claim for retaliation, he has failed to show a genuine issue of material fact that his protected conduct, filing grievances against other package room correctional officers, was a substantial or motivating factor in C.O. Miller's issuance of the subject misbehavior report.

As a general matter, it is difficult to establish one defendant's retaliation for

complaints against other correctional officers. *See, e.g., Hare v. Hayden*, 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) (plaintiff's retaliation claim was dismissed against a correctional officer when the only alleged basis for the retaliatory action was a complaint plaintiff filed involving a different officer) (citing *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009)); *Guillory v. Ellis*, No. 9:11-CV-600 (MAD/ATB), 2014 WL 4365274, at *18 (N.D.N.Y. Aug. 29, 2014) ("it is difficult to establish one defendant's retaliation for complaints against another defendant"). Nevertheless, this general rule may not apply where there are indications of "a retaliatory purpose—i.e., that the [officer's conduct] was meant to penalize [the plaintiff] for bringing past grievances, and to dissuade future grievances." *Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 338–39 (S.D.N.Y. 2015) (alterations and internal quotation marks omitted). Thus, while a plaintiff who "alleges retaliatory adverse action by one officer for a grievance filed against another officer . . . faces a heightened burden of establishing a causal connection," this is not per say barring. *Henderson v. Vanderwerff*, No. 9:13-CV-1537 (MAD/CFH), 2016 WL 660921, at *4 (N.D.N.Y. Feb. 18, 2016).

Here, it is undisputed that plaintiff did not file any previous grievances or complaints against C.O. Miller.  C.O. Miller has denied harboring any retaliatory motivation with respect to the misbehavior report she issued against him relative to the July 10, 2019 incident.  (Declaration of Megan Miller ("Miller Decl.") ¶ 12).  Moreover, plaintiff has not alleged that C.O. Miller made any contemporaneous comments to plaintiff concerning his previously filed grievances against other correctional officers,

or even suggested to plaintiff that she was aware of his history of filing grievances against others.  The record otherwise lacks any evidence establishing why C.O. Miller would issue a false misbehavior report against plaintiff, beyond plaintiff's conclusory allegations of her close working relationship with other correctional officers in the package room.

Even assuming C.O. Miller's misbehavior report was "false," as plaintiff suggests, "[i]t is well settled that filing false or unfounded misbehavior charges against an inmate does not give rise to a per se constitutional violation actionable under section 1983." *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 205 (N.D.N.Y. 2015) (internal quotation marks and citation omitted).  The Second Circuit has made clear that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report. There must be more, such as retaliation against the prisoner for exercising a constitutional right." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997).

Accordingly, based on the record before this court plaintiff has not presented a genuine issue of material fact for a jury to resolve with respect to any retaliatory animus on the part of C.O. Miller.  *See Wright v. Goord*, 554 F.3d 244, 274 (2d Cir. 2009) (dismissing retaliation claim against a correction officer when the only alleged basis for retaliation was a complaint about an incident involving another correction officer); *Alicea v. Maly*, No. 12-CV-0203 (MAD/TWD), 2015 WL 4326114, at *14-15 (N.D.N.Y. July 14, 2015) (dismissing retaliation claim which alleged that C.O. Trinidad retaliated against the plaintiff for protected actions he took with respect to C.O.

Freeman, where the plaintiff alleged a close personal friendship between Trinidad and Freeman and the record was "devoid of any specifics, but replete with conclusions"); *Ciaprai v. Goord*, No. 02-CV-0915 (GLS), 2005 WL 3531464, at *9 (N.D.N.Y. Dec. 22, 2005) (entering summary judgment on retaliation claim where the plaintiff cited only past grievances filed against correction officers other than the officer who disciplined the plaintiff).

Moreover, it is well-settled that, even where plaintiff *can* make a showing of retaliatory motive, the defendant may be entitled to summary judgment if she can show that the alleged retaliatory action would have occurred even without the improper motivation. *Greer v. Mehiel*, 805 F. App'x 25, 29 (2d Cir. 2020) (citing *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  The defendant bears the burden of making the showing that she would have taken exactly the same action in the absence of an improper motive. *Greer*, 805 F. App'x at 29 (citing *Scott*, 344 F.3d at 288).  Here, plaintiff's retaliation claim is further subject to dismissal because C.O. Miller had a non-retaliatory basis for filing a misbehavior report, and would have taken the same action even if she had known of plaintiff's prior grievances against other correctional officers.  On July 11, 2019 C.O. Miller cited plaintiff for, among other things, "Refusing a Direct Order" in violation of DOCCS Rule 106.10.  (Pl.'s Opp. Pt. 3 at 8).  At his deposition, plaintiff admitted to violating this rule in that despite C.O. Miller's verbal directive, he refused to leave the package room without his package.  (Pl.'s Dep. at 35–36).  Thus, defendants have established a non-retaliatory reason for C.O. Miller's

filing of the subject misbehavior report, and dismissal is further warranted on this basis.
*See Logan v. Graham*, No. 9:18-CV-0291 (DNH/ML), 2019 WL 8015209, at *14
(N.D.N.Y. Nov. 26, 2019), *report and recommendation adopted*, 2020 WL 871197
(N.D.N.Y. Feb. 21, 2020) (defendants established non-retaliatory reason for the filing of
the underlying misbehavior report where plaintiff admitted to some of the allegations
against him).  Based on the foregoing, it is recommended that plaintiff's First
Amendment retaliation claim against C.O. Miller be dismissed.

### 2.    Sgt. Duquette

The district court liberally construed plaintiff's complaint to also allege a
retaliation claim against Sgt. Duquette, with respect to plaintiff's "dirty" urine test
results and Sgt. Duquette's "false" investigation of plaintiff's claim for destroyed food.
(Dkt. No. 7 at 13–14).  At his deposition, plaintiff testified that Sgt. Duquette had "lied"
during prior sergeant's reviews conducted with respect to plaintiff's packaged food
orders.  (Pl.'s Dep. at 50–52).  Specifically, plaintiff stated that Sgt. Duquette
consistently found plaintiff's claims to be "unsubstantiated," despite the favorable
evidence provided by plaintiff.  (*Id.*).  Plaintiff testified that Sgt. Duquette
"misrepresent[ed] and put false information" in his investigation of plaintiff's claim for
damaged food items.  (*Id.* at 64–65).  He further stated that Sgt. Duquette "always had a
grudge against" plaintiff because of the numerous sergeant's reviews and follow-up
investigations he performed in conjunction with plaintiff's complaints.  (*Id.* at 65–66).

Plaintiff further testified at his deposition that he had since come to learn that his
positive drug test results were the result of a DOCCS-wide issue concerning faulty

testing equipment, and not issued in retaliation for any of his protected conduct. (*Id.* at 62–63). Although he insisted that it was a "mistake" to test plaintiff for drugs two days in a row "when the situation didn't call for a drug test, " plaintiff conceded that Sgt. Duquette had no involvement with plaintiff's positive drug test results. (*Id.* at 62–63).

Based on plaintiff's deposition testimony and the remainder of the summary judgment record, the court finds no basis on which plaintiff maintains a retaliation claim against Sgt. Duquette based on the issues surrounding his positive drug test and/or the meeting at which Sgt. Duquette questioned plaintiff about sending feces to C.O. Miller. The court is thus left to assess plaintiff's allegation that Sgt. Duquette conducted an improper and intentionally false investigation of plaintiff's claim for destroyed food items, in retaliation for plaintiff's consistent request for the review of such matters.

Assuming for the purposes of this court's analysis that plaintiff's allegations satisfy the first and second prong of a retaliation claim, he has nevertheless failed to raise a question of fact as to any retaliatory intent on the part of Sgt. Duquette. According to his sworn declaration, Sgt. Duquette was tasked with conducting an investigation of plaintiff's grievance concerning the July 10, 2019 incident. (Declaration of David Duquette ("Duquette Decl.") ¶¶ 4–6). This included an interview of plaintiff, as well as C.O. Miller. (*Id.*). Sgt. Duquette maintains that his investigation into plaintiff's grievance was conducted in accordance with DOCCS policy and procedures, and that his finding that plaintiff's claim was unsubstantiated was based upon the record and other objective evidence presented. (*Id.* ¶ 7). Sgt. Duquette denies having any retaliatory intentions relative to his investigation of plaintiff's claims arising

from the July 10, 2019 incident.  (*Id.* ¶ 11).

Conversely, plaintiff offers no evidence to corroborate his claim that Sgt.

Duquette investigated his claims with a retaliatory intent.  In evaluating whether a

causal connection exists between the plaintiff's protected activity and a state official's

actions, "a number of factors may be considered, including: (i) the temporal proximity

between the protected activity and the alleged retaliatory act; (ii) the [plaintiff's] prior

good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements

by the defendant concerning his motivation." *Baskerville v. Blot*, 224 F. Supp. 2d 723,

732 (S.D.N.Y. 2002) (citing *Colon*, 58 F.3d at 872-73). "The causal connection must be

sufficient to support an inference that the protected conduct played a substantial part in

the adverse action." *Id.*

The record lacks any such proof to suggest a causal connection between Sgt.

Duquette's unfavorable investigation findings, and plaintiff's grievances/claims.  Most

relevant, plaintiff was never "vindicated" on the matters as they related to the July 10,

2019 incident, nor has plaintiff alleged that Sgt. Duquette ever made any statements

concerning the motivation for his investigation findings.  To the extent plaintiff alleges

that Sgt. Duquette "fail[ed] to properly investigate" plaintiff's claims, "mere negligence

is not enough to support a claim of retaliation[.]" *Brandon v. Kinter*, 938 F.3d 21, 40

(2d Cir. 2019) (citing *Greenwich Citizens Committee, Inc. v. Counties of Warren and

Washington Indus. Development Agency*, 77 F.3d 26 (2d Cir. 1996)).

Plaintiff's conclusory assertion that Sgt. Duquette held a grudge against plaintiff,

without more, is insufficient to overcome the defendants' evidence.  *See, e.g., Rucano v.*

*Annucci,* No. 9:18-CV-218 (GTS/CFH), 2021 WL 3293504, at *19 (N.D.N.Y. May 19, 2021), *report and recommendation adopted sub nom.*, 2021 WL 3292394 (N.D.N.Y. Aug. 2, 2021) ("Plaintiff's "shifting and conclusory assertions to the contrary fail to raise a genuine issue of material fact as to his First Amendment retaliation claim . . . and are insufficient to overcome defendants' documentary case."). Based on the foregoing, it is recommended that plaintiff's First Amendment retaliation claim against Sgt. Duquette be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 31) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: April 19, 2022

Andrew T. Baxter
U.S. Magistrate Judge